IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TOMMY RAY BROWN,

        Plaintiff,                             No. CIV S-07-0956 MCE DAD P

   vs.

G. MARSHALL, et al.,

        Defendants.                 ORDER

_____/

       Plaintiff, a state prisoner proceeding pro se, has filed a civil rights action seeking relief pursuant to 42 U.S.C. § 1983. Pursuant to this court's May 24, 2007 order, plaintiff has filed a properly completed application to proceed in forma pauperis under 28 U.S.C. § 1915. This proceeding was referred to the undersigned magistrate judge in accordance with Local Rule 72-302 and 28 U.S.C. § 636(b)(1).

       Plaintiff has submitted an in forma pauperis application that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, plaintiff will be granted leave to proceed in forma pauperis.[1]

---

[1] On June 18, 2007, plaintiff filed a motion for reconsideration of this court's May 24, 2007 order, denying his application to proceed informa pauperis. Because the court has determined that plaintiff's May 25, 2007 application makes the showing required by 28 U.S.C. § 1915(a), the court will deny plaintiff's motion as moot.

1

1   Plaintiff is required to pay the statutory filing fee of $350.00 for this action.  See
2  28 U.S.C. §§ 1914(a) & 1915(b)(1).  An initial partial filing fee of $1.16 will be assessed by this
3  order.  See 28 U.S.C. § 1915(b)(1).  By separate order, the court will direct the appropriate
4  agency to collect the initial partial filing fee from plaintiff's prison trust account and forward it to
5  the Clerk of the Court.  Thereafter, plaintiff will be obligated to make monthly payments of
6  twenty percent of the preceding month's income credited to plaintiff's prison trust account.
7  These payments will be collected and forwarded by the appropriate agency to the Clerk of the
8  Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in
9  full.  See 28 U.S.C. § 1915(b)(2).

10   The court is required to screen complaints brought by prisoners seeking relief
11  against a governmental entity or an officer or employee of a governmental entity.  See 28 U.S.C.
12  § 1915A(a).  The court must dismiss a complaint or portion thereof if the prisoner has raised
13  claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be
14  granted, or that seek monetary relief from a defendant who is immune from such relief.  See 28
15  U.S.C. § 1915A(b)(1) & (2).

16   A claim is legally frivolous when it lacks an arguable basis either in law or in fact.
17  Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28
18  (9th Cir. 1984).  The court may, therefore, dismiss a claim as frivolous where it is based on an
19  indisputably meritless legal theory or where the factual contentions are clearly baseless.  Neitzke,
20  490 U.S. at 327.  The critical inquiry is whether a constitutional claim, however inartfully
21  pleaded, has an arguable legal and factual basis.  See Jackson v. Arizona, 885 F.2d 639, 640 (9th
22  Cir. 1989); Franklin, 745 F.2d at 1227.

23   Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and
24  plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the
25  defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  Bell Atlantic
26  Corp. v. Twombly, ___ U.S. ___, ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson,

2

355 U.S. 41, 47 (1957)). However, in order to survive dismissal for failure to state a claim a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic, 127 S. Ct. at 1965. In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

1          In the present case, plaintiff has identified as defendants G. Marshall, R. Gore,
2   Quezada, P. Statti, D.E. Vanderville, T. McDonald, R.K. Wong, D.L. Runnels, and T. Felker.
3          Plaintiff alleges as follows.  On March 15, 2005, he was placed in administrative
4   segregation, pending an investigation for "conspiracy to assault staff."  On March 24, 2005,
5   plaintiff appeared before the Institution Classification Committee (ICC), so they could determine
6   whether he should be retained in administrative segregation.  Plaintiff requested staff assistance
7   to help prepare his defense.  The Chief Deputy Warden, R. Barnes, granted plaintiff's request and
8   appointed Correctional Officer Ditton to serve as the investigative employee.  Ditton interviewed
9   plaintiff and told him that he would question all of plaintiff's requested witnesses.  Ditton also
10  said that he would provide plaintiff with a report within 24 hours before the next ICC hearing.
11  However, Ditton never issued plaintiff a copy of the report.
12         On April 6, 2005, plaintiff alleges that Captain Johnson issued plaintiff an
13  administrative segregation order.  Plaintiff's charge had been enhanced from "conspiracy to
14  assault staff" to "conspiracy to murder peace officers."  Plaintiff alleges that defendant G.
15  Marshall falsely reported that confidential informants provided reliable information proving that
16  plaintiff was part of such a conspiracy.  On April 12, 2005, plaintiff received a CDC 115
17  reflecting the upgraded charge, a CDC 837 crime incident report, and CDC 1030 confidential
18  disclosure forms.
19         On April 14, 2005, plaintiff again appeared before the ICC, and it was determined
20  that he should stay in administrative segregation, pending the adjudication of his alleged rules
21  violation.  Plaintiff contends that he was unable to present a defense or contest further
22  administrative segregation placement because he never received the report from Ditton.
23         On May 12, 2005, plaintiff appeared at his disciplinary hearing before Senior
24  Hearing Officer Lieutenant C. Bolls.  Lieutenant Bolls found plaintiff guilty of conspiracy to
25  murder peace officers.  Plaintiff was assessed 180 days loss of credit and referred for a security
26  housing unit (SHU) term.  On June 30, 2005, plaintiff received a copy of the final disciplinary

disposition, reflecting the outcome of the hearing. Shortly thereafter, plaintiff appealed the decision.

On July 7, 2005, plaintiff appeared again before the ICC for confirmation of the CDC 115 "conspiracy to murder peace officers" rules violation and the SHU term assessment. However, the ICC informed plaintiff at that time that they intended to reissue the CDC 115 and rehear it. On July 15, 2005, plaintiff received the reissued CDC 115. On July 20, 2005, plaintiff wrote the chief disciplinary officer and requested staff assistance and another investigative employee.

On August 13, 2005, plaintiff appeared at his disciplinary hearing before Senior Hearing Officer Lieutenant Peery. Plaintiff informed Peery that he had not received staff assistance or the help of an investigative employee. Notwithstanding, Peery found him guilty of conspiracy to murder peace officers.

On August 30, 2005, plaintiff received a copy of the final disciplinary disposition, reflecting the outcome of the hearing. Plaintiff appealed the guilty finding on September 12, 2005.

On September 15, 2005, plaintiff appeared once again before the ICC for confirmation of the CDC 115 "conspiracy to murder peace officers" rules violation and SHU term assessment. At that time the ICC again informed plaintiff that they intended to reissue the CDC 115 and rehear it.

Plaintiff alleges that D.L. Runnels granted him a computer voice stress analyzer test. Runnels instructed the ICC to use the results of the test at the next CDC 115 disciplinary hearing.

On September 20, 2005, plaintiff received the reissued CDC 115, CDC 1030 forms, and the CDC 837 crime report. The report included additional pages, listing new alleged co-conspirators. On September 27, 2005, Lieutenant Stafford conducted another computer voice stress analyzer test on plaintiff. On October 16, 2005, plaintiff wrote to Warden D.L. Runnels

and Chief Disciplinary Officer R.K. Wong, requesting assignment of another investigative employee. Plaintiff also requested the results of his computer voice stress test.

On October 19, 2005, plaintiff appeared at his disciplinary hearing before Senior Hearing Officer Lieutenant P. Statti. Plaintiff informed Statti that the assigned investigative employee, R. Gore, did not question all of plaintiff's witnesses even though he provided Gore with a 28-page written statement and witness questionaire. Plaintiff also informed Statti that the staff assistant assigned to his case, Quezada, would not assist plaintiff with preparation of his defense. Plaintiff explained that no one had questioned any of his newly alleged co-conspirators. Plaintiff also explained that he had not received the formal results of his voice stress test. Plaintiff requested postponement of the hearing and new staff assistance. Lieutenant Statti denied plaintiff's requests and found him guilty of the charge. Plaintiff was assessed 180 days loss of credit.

On October 25, 2005, plaintiff wrote Chief Disciplinary Officer R. K. Wong and Warden D.L. Runnels. He explained that his due process rights had been denied because no one had interviewed his witnesses or afforded him access to all non-confidential reports.

On November 17, 2005, plaintiff received a copy of the final disciplinary disposition. Plaintiff appealed the guilty findings on November 21, 2005.

On November 23, 2005, plaintiff appeared yet again before the ICC for confirmation of the CDC 115 "conspiracy to murder peace officers." Plaintiff was assessed 180 days loss of credit and a 48 month SHU term. However, on January 19, 2006, plaintiff received an administrative segregation order, stating that a classification staff representative found insufficient information in the CDC 115 to warrant a guilty finding.

On January 26, 2006, plaintiff made another appearance before ICC and was informed that the prison had appealed the decision by the classification staff representative to the Departmental Review Board and that the Board's decision would be final. Plaintiff alleges that

/////

D.E. Vanderville had sought the Board's review. Plaintiff also alleges that Vanderville falsified information about the results of the voice stress test that was administered to plaintiff.

Plaintiff alleges that Vanderville intentionally referred two of his alleged co-conspirators' cases the Board. Plaintiff further alleges that, before the Board could rule, the classification service unit took over the case. The unit's chief, T. McDonald, reviewed one of the two cases. Plaintiff alleges that McDonald adopted the ICC findings in that case, and his decision was then applied to all of the other inmates, including plaintiff, even though the circumstances in plaintiff's case were different.

Plaintiff alleges that defendants violated his due process rights. Plaintiff seeks declaratory relief, injunctive relief, damages, costs of the suit, and any additional relief the court deems proper and just.

The court finds that plaintiff's complaint states cognizable claims for relief against defendants Marshall, Gore, Quezada, Statti, Vanderville, McDonald, Wong, and Runnels. If the allegations of the complaint are proven against the defendants, plaintiff has a reasonable opportunity to prevail on the merits of this action. The court finds that plaintiff's complaint does not state a cognizable claim against defendant Felker. Plaintiff has failed to allege any specific causal link between the actions of Felker and the claimed constitutional violations.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's May 25, 2007 application to proceed in forma pauperis is granted.

2. Plaintiff's June 18, 2007 motion for reconsideration is denied as moot.

3. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee of $1.16. All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

4. Service of the complaint is appropriate for the following defendants: Marshall, Gore, Quezada, Statti, Vanderville, McDonald, Wong, and Runnels.

5. The Clerk of the Court shall send plaintiff 8 USM-285 forms, one summons, an instruction sheet, and a copy of the complaint filed May 21, 2007.

6. Within thirty days from the date of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit all of the following documents to the court at the same time:

    a. The completed, signed Notice of Submission of Documents;

    b. One completed summons;

    c. One completed USM-285 form for each defendant listed in number 4 above; and

    d. Nine copies of the complaint filed May 21, 2007.

7. Plaintiff shall not attempt to effect service of the complaint on defendants or request a waiver of service of summons from any defendant. Upon receipt of the above-described documents, the court will direct the United States Marshal to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4 without payment of costs.

DATED: September 20, 2007.

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
brow0956.1

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TOMMY RAY BROWN,

        Plaintiff,                    No. CIV S-07-0956 MCE DAD P

    vs.

G. MARSHALL, et al.,                NOTICE OF SUBMISSION

        Defendants.             OF DOCUMENTS

_____/

        Plaintiff hereby submits the following documents in compliance with the court's order filed _____:

        _____ one completed summons form;

        _____ eight completed USM-285 forms; and

        _____ nine true and exact copies of the complaint filed May 21, 2007.

DATED: _____.

                                                          Plaintiff