1
2
3
4
5
6
7

8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   TOMMY RAY BROWN,

11              Plaintiff,              No. CIV S-07-0956 MCE DAD P

12        vs.

13   G. MARSHALL, et al.,              ORDER AND

14              Defendants.            FINDINGS AND RECOMMENDATIONS

15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action seeking

17   relief under 42 U.S.C. § 1983.  This matter is before the court on a motion for summary

18   judgment brought on behalf of defendants Quezada, Vanderville, McDonald, Runnels, Wong,

19   Marshall, Gore, and Statti pursuant to Rule 56 of the Federal Rules of Civil Procedure.  Plaintiff

20   has filed an opposition to the motion and defendants have filed a reply.

21                          **BACKGROUND**

22          Plaintiff is proceeding on his third amended complaint against defendants

23   Quezada, Vanderville, McDonald, Runnels, Wong, Marshall, Gore, and Statti.  In relevant part,

24   plaintiff alleges in that complaint as follows.  On March 15, 2005, prison officials placed plaintiff

25   in administrative segregation, pending an investigation for Conspiracy to Assault Staff.  Prison

26   officials later enhanced the disciplinary charge against plaintiff from Conspiracy to Assault Staff

1

to Conspiracy to Murder Peace Officers.  On May 12, 2005, plaintiff appeared at his disciplinary hearing and was found guilty of Conspiracy to Murder Peace Officers.  For procedural reasons, prison officials twice re-issued and re-heard plaintiff's disciplinary charge.  Ultimately, plaintiff was found guilty of the charge and assessed 180-days loss of time credits.  The Institution Classification Committee also committed him to a 48-month security housing unit ("SHU") term. (Third Am. Compl. at 6-10.)

Plaintiff alleges that defendants deprived him of due process in connection with the adjudication of his disciplinary charge.  For example, plaintiff claims that the defendants denied him adequate notice of the charge; relied on confidential informants without assessing if those informants had first-hand information; denied him his right to call witnesses and prepare a sufficient defense; and falsified reports to indicate that they had acted in compliance with due process requirements even though they had not.  (Third Am. Compl. at 17-41.)

**SUMMARY JUDGMENT STANDARDS UNDER RULE 56**

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56©.

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56©).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

2

1  party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

2  concerning an essential element of the nonmoving party's case necessarily renders all other facts

3  immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

4  whatever is before the district court demonstrates that the standard for entry of summary

5  judgment, as set forth in Rule 56©, is satisfied."  Id. at 323.

6        If the moving party meets its initial responsibility, the burden then shifts to the

7  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

8  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

9  establish the existence of this factual dispute, the opposing party may not rely upon the

10  allegations or denials of its pleadings but is required to tender evidence of specific facts in the

11  form of affidavits, and/or admissible discovery material, in support of its contention that the

12  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

13  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

14  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

15  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

16  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

17  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

18  1436 (9th Cir. 1987).

19        In the endeavor to establish the existence of a factual dispute, the opposing party

20  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

21  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

22  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

23  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

24  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

25  committee's note on 1963 amendments).

26  /////

1    In resolving the summary judgment motion, the court examines the pleadings,

2  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

3  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

4  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

5  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

6  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

7  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

8  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

9  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

10  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

11  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

12  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

13    **OTHER APPLICABLE LEGAL STANDARDS**

14  I.  Civil Rights Act Pursuant to 42 U.S.C. § 1983

15    The Civil Rights Act under which this action was filed provides as follows:

16    Every person who, under color of [state law] . . . subjects, or causes
      to be subjected, any citizen of the United States . . . to the
17    deprivation of any rights, privileges, or immunities secured by the
      Constitution . . . shall be liable to the party injured in an action at
18    law, suit in equity, or other proper proceeding for redress.

19  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

20  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

21  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

22  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

23  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

24  omits to perform an act which he is legally required to do that causes the deprivation of which

25  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

26  /////

4

1    Moreover, supervisory personnel are generally not liable under § 1983 for the

2    actions of their employees under a theory of respondeat superior and, therefore, when a named

3    defendant holds a supervisorial position, the causal link between him and the claimed

4    constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

5    (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  Vague and conclusory

6    allegations concerning the involvement of official personnel in civil rights violations are not

7    sufficient.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

8    II.  The Fourteenth Amendment and Due Process Protections for Prisoners

9    Prisoners retain their rights under the Fourteenth Amendment Due Process

10   Clause, but they are subject to restrictions imposed by the nature of the regime to which they

11   have been lawfully committed.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  It is well

12   established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the

13   full panoply of rights due a defendant in such proceedings does not apply."  Id.  However,

14   prisoners are entitled to the following procedures at disciplinary hearings where they may lose

15   good-time credits or be placed in solitary confinement:  (1) advanced written notice of the

16   claimed violation at least twenty-four hours before the hearing, (2) a written statement of fact

17   findings as to the evidence relied upon and reasons for the actions taken, and (3) a right to call

18   witnesses and present documentary evidence where such would not be unduly hazardous to

19   institutional safety or correctional goals.  Id. at 563-66; see also Hines v. Gomez, 108 F.3d 265,

20   268 (9th Cir. 1997); McFarland v. Cassady, 779 F.2d 1426, 1428 (9th Cir. 1986).  If a prisoner is

21   illiterate or the issues are so complex so as to make it unlikely that the inmate will be able to

22   collect and present the evidence necessary, the prisoner may be able to seek help from a fellow

23   inmate or help from correctional staff.  Id. at 570.  "Findings that result in the loss of liberty will

24   satisfy due process if there is some evidence which supports the decisions of the disciplinary

25   board."  Zimmerlee v. Keeney, 831 F.2d 183 (9th Cir. 1987).  See also Edwards v. Balisok, 520

26   /////

5

1   U.S. 1584, 1589 (1997); Burnsworth v. Gunderson, 179 F.3d 771, 773 (9th Cir. 1999); Hines v.

2   Gomez, 108 F.3d at 268.

### DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4   I.  Defendants' Statement of Undisputed Facts and Evidence

5            Defendants' statement of undisputed facts is supported by citations to copies of

6   the rules violation reports ("RVR") issued to plaintiff, copies of confidential information

7   disclosure forms provided to plaintiff prior to his disciplinary hearings, and copies of confidential

8   memoranda from plaintiff's central prison file.[1]  It is also supported by references to excerpts

9   from plaintiff's deposition.

10           The evidence submitted by defendants establishes the following.  Between 2001

11  and 2006, plaintiff was incarcerated at High Desert State Prison ("HDSP").  On March 15, 2005,

12  prison officials removed plaintiff from the general population and placed him in administrative

13  segregation.  They informed him that they were placing him in administrative segregation

14  because he was implicated in a conspiracy to assault correctional staff, and that their

15  investigation of the conspiracy was ongoing.  (Defs.' SUDF 2-3, Defs.' Exs. A & B, Pl's Dep.)

16           By way of background, as early as December 30, 2003, reliable confidential

17  source(s) disclosed to prison officials that African American inmates at HDSP were forming a

18  conspiracy on C-Facility to assault correctional staff.  According to the source(s), African

19  American inmates were angry with the way correctional staff handled events surrounding a race

20  riot that occurred at HDSP.  Some inmates believed that correctional staff had intentionally

21  manipulated events to cause the riot and to also cause inmates of other racial and ethnic

22  backgrounds to injure African American inmates.  The source(s) provided details of the

23  conspiracy, including that staff were going to be lured into vulnerable locations while other

---

24

25           [1]  Defendants have requested that the confidential memoranda from plaintiff's central file, referenced as Exhibits D through J in support of defendants' motion for summary judgment, be reviewed by the court in camera and filed under seal.  Good cause appearing, the court will grant

26  defendants' request.

inmates staged a mock fight.  As staff responded to the mock fight, predetermined inmates were assigned to attack specific peace officers.  The inmates were supposed to carry out the attacks using stabbing weapons on the victim's face, neck, and groin, essentially areas not covered by the officers' stab-resistant vests.  (Defs.' SUDF 4, Defs.' Ex. D.)

On February 6, 2004, reliable confidential source(s) disclosed that African American inmates at HDSP's C-Facility greatly resented staff who placed them on lock-down status following the race riot in which inmates of other races targeted African American inmates. (Defs.' SUDF 5, Defs.' Ex. E.)

On January 26, 2005, reliable confidential source(s) disclosed that the previously-identified plan was ready to commence as prison officials were releasing African American inmates from lock-down status.  The source(s) identified plaintiff as an individual actively involved in planning the conspiracy and identified five of the intended victims.  The source(s) provided information that inmates had acquired weapons in order to carry out of the attacks. (Defs.' SUDF 6, Defs.' Ex. F.)

On February 25, 2005, reliable confidential source(s) disclosed that plaintiff was acting with eight other inmates in the previously-described conspiracy and indicated that the co-conspirators had agreed that if prison officials discovered their plan they would all claim that there was too much "factionalism" or "tribalism" among African American inmates to work together towards a common goal of assaulting specific prison staff.  The source(s) indicated that the plan was to kill correctional staff.  (Defs.' SUDF 7, Defs.' Ex. G.)

On May 2, 2005, reliable confidential source(s) disclosed that plaintiff took part in communications to advance the plan to assault the correctional officers on C-Facility at HDSP. (Defs.' SUDF 8, Defs.' Ex. H.)

Plaintiff has a history of assaulting and conspiring to assault correctional staff. On February 14, 1991, plaintiff battered two correctional officers at Pelican Bay State Prison.  In addition, in June 2000, prison officials identified plaintiff as an inmate involved in a plan to kill

1    correctional staff at Pelican Bay State Prison.  (Defs.' SUDF 9, Defs.' Exs. I & J.)

2                    A.  Plaintiff's First Disciplinary Hearing

3                    On April 12, 2005, prison officials served plaintiff with a copy of an RVR for

4    Conspiracy to Murder Peace Officers.  Defendant Marshall authored the RVR, and it consisted of

5    a two-page written summary of the charge against plaintiff.  The RVR identified the specific act

6    charged: Conspiracy to Murder Peace Officers and specified the names of plaintiff's eight co-

7    conspirators and the names of the five intended victims.  The RVR also identified the method of

8    attack planned in the conspiracy and stated that confidential source(s) had identified plaintiff as

9    being involved in the conspiracy.  (Defs.' SUDF 10, Defs.' Ex. A.)

10                   Senior Hearing Officer Bolls assigned Officer K. Taylor Thomas as a staff

11   assistant to plaintiff in light of the complexity of issues involved in the disciplinary charge.

12   Officer Thomas was present at the hearing with plaintiff and spoke with him about the nature of

13   the charges against him and the documents prison officials were going to use to adjudicate the

14   charge.  Officer Thomas reported to Officer Bolls that plaintiff understood the charges and

15   documents as well as the disciplinary process.  (Defs.' SUDF 11, Defs.' Ex. A.)

16                   Senior Hearing Officer Bolls assigned Officer J. Marsh as an investigative

17   employee to assist plaintiff in obtaining witnesses for the disciplinary hearing.  Plaintiff

18   identified eighteen witnesses for Officer Marsh to question and compiled a list of questions for

19   each witness.  Officer Marsh questioned each of the eighteen witnesses, including inmates and

20   staff, and recorded their responses in a type-written report.  Officer Marsh also included with his

21   report a statement by plaintiff, which contained legal arguments as to why prison officials should

22   find him not guilty of the charged disciplinary violation.  Officer Marsh provided both plaintiff

23   and Senior Hearing Officer Bolls with a copy of the report.  (Defs.' SUDF 12-14, Defs.' Ex. A.)

24                   Plaintiff's first disciplinary hearing took place on May 15, 2005.  Plaintiff

25   attended the hearing and pled not guilty.  Plaintiff had an opportunity to request live witnesses at

26   the hearing when prison officials initially served him with the RVR, however he did not do so at

                                              8

1    that time.  At the hearing itself, plaintiff requested Officer Ginder, Sergeants Minnic and

2    Simmerson, and Agent Marquez's presence as witnesses.  Plaintiff had previously asked Officer

3    Marsh to question these four witnesses and had drafted a series of questions for each of them.

4    Officer Marsh had done so and reported the answers verbatim.  Officer Marsh had also provided

5    a written statement with their responses to plaintiff's questions to Senior Hearing Officer Bolls.

6    (Defs.' SUDF 15-18, Defs.' Ex. A.)

7            Senior Hearing Officer Bolls asked plaintiff what further questions he wanted to

8    ask Officer Ginder, Sergeants Minnic and Simmerson, and Agent Marquez.  Plaintiff responded

9    that he wished to question them about their answers in Officer Marsh's investigative employee

10   report.  Plaintiff also requested Officer Dittman's presence as a witness because plaintiff had four

11   questions for him.  Senior Hearing Officer Bolls denied plaintiff's request for Officer Ginder,

12   Sergeants Minnic and Simmerson, and Agent Marquez's presence because Officer Marsh's

13   investigative employee report contained the statements of these witnesses.  However, Senior

14   Hearing Officer Bolls did contact Officer Dittman by telephone and asked him plaintiff's four

15   questions and included Officer Dittman's responses in the final hearing report.  (Defs.' SUDF

16   19-20, Defs.' Ex. A.)

17           Senior Hearing Officer Bolls found plaintiff guilty of Conspiracy to Murder Peace

18   Officers.  He determined that plaintiff had participated with eight other inmates in planning an

19   attack designed to kill correctional officers and that an overt act in furtherance of the conspiracy

20   had been committed when inmate Doyle, a co-conspirator, obtained a weapon to use in the

21   attack.  Senior Hearing Officer Bolls drafted a seven-page type-written summary of the

22   disciplinary hearing, including a four and one half-page written explanation of his reasons for

23   finding plaintiff guilty of the disciplinary charge.  He assessed plaintiff 180-days loss of credits

24   and recommended the Institution Classification Committee (ICC) assess plaintiff a term in the

25   SHU.  Prison officials served plaintiff with a copy of Officer Bolls' written findings and the

26   disposition of the hearing.  (Defs.' SUDF 21-24, Defs.' Ex. A.)

On April 12, 2005, when prison officials initially served plaintiff with a copy of the RVR, they also provided him confidential information disclosure forms (CDC 1030).[2] Plaintiff's confidential information disclosure forms contained a summary of all confidential information prison officials intended to use at plaintiff's first disciplinary hearing. (Defs.' SUDF 25-26, Defs.' Ex. A.)

Nevertheless, on July 6, 2005, defendant Wong ordered prison officials to re-issue and re-hear plaintiff's RVR. According to defendant Wong, Senior Hearing Officer Bolls relied on information contained in a confidential memorandum authored by Officer Dittman dated May 2, 2005. Although prison officials issued plaintiff a confidential disclosure form pertaining to this confidential memorandum, plaintiff's RVR did not indicate that they had done so. In defendant Wong's view, the lack of notation on plaintiff's RVR stating that plaintiff received the confidential disclosure form for Officer Dittman's confidential memorandum at least 24 hours prior to his hearing violated plaintiff's right to due process and required that the disciplinary charge be subject to a new hearing. (Defs.' SUDF 27, Defs.' Ex. A.)

B. Plaintiff's Second Disciplinary Hearing

Plaintiff's second disciplinary hearing took place on August 13, 2005. On July 15, 2005, prison officials served plaintiff with another copy of the RVR. The second RVR, like the first, consisted of a two-page written summary of the charges against plaintiff. Again, it identified the specific act charged: Conspiracy to Murder Peace Officers and specified the names of plaintiff's eight co-conspirators and the names of the five intended victims. The RVR also identified the method of attack planned in the conspiracy and stated that confidential source(s) had identified plaintiff as being involved in the conspiracy. On the same day, prison officials served plaintiff with a copy of confidential information disclosure forms containing a summary

---

[2] Confidential information disclosure forms describe the content of the confidential information implicating an inmate for a violation insofar as possible without endangering institutional security.

1   of all confidential information they intended to use at the second disciplinary hearing. (Defs.'

2   SUDF 29-30, Defs.' Ex. A.)

3          Senior Hearing Officer Peery observed that plaintiff had a high score on the test

4   the prison uses for measuring an inmate's ability to speak, understand, read and write English.

5   He also determined that plaintiff was familiar with the nature of the charges against him. In fact,

6   plaintiff submitted numerous written pages of argument supporting his contention that he was not

7   guilty of the disciplinary charge. Based on these circumstances, Senior Hearing Officer Peery

8   did not assign plaintiff a staff assistant for this hearing. (Defs.' SUDF 34-35, Defs.' Ex. A.)

9          Plaintiff attended the second hearing and pled not guilty. Plaintiff had an

10  opportunity to request live witnesses at the hearing when prison officials initially served him

11  with the RVR but did not do so. At the hearing itself, however, plaintiff again requested the

12  appearance of Officer Ginder, Sergeants Minnic and Simmerson, and Agent Marquez as

13  witnesses. Senior Hearing Officer Peery asked plaintiff what further questions he had for these

14  witnesses, and plaintiff responded that he wanted to question them about their answers in Officer

15  Marsh's investigative employee report. Officer Peery denied plaintiff's request because the

16  investigative employee report already contained the statements of the witnesses in question.

17  (Defs.' SUDF 31-33, Defs.' Ex. A.)

18         Senior Hearing Officer Peery found plaintiff guilty of Conspiracy to Murder Peace

19  Officers. He determined that plaintiff had participated with eight other inmates in planning an

20  attack designed to kill correctional officers and that an overt act in furtherance of the conspiracy

21  had been committed when a co-conspirator obtained a weapon to use during the attack. The

22  hearing officer drafted another seven-page type-written summary of the hearing, including a four

23  and one half-page written explanation of the reasons why he found plaintiff guilty of the charge.

24  Similar to Officer Bolls, Senior Hearing Officer Peery assessed plaintiff 180-day loss of credits

25  and recommended the ICC assess him a term in the SHU. Prison officials served plaintiff with a

26  /////

1   copy of Officer Peery's written findings and the disposition of the hearing.  (Defs.' SUDF 36-39,

2   Defs.' Ex. A.)

3          On September 13, 2005, defendant Wong ordered prison officials to re-issue and

4   re-hear plaintiff's RVR once more.  Defendant Wong explained that Senior Hearing Officer

5   Peery relied on the same investigative employee report and staff assistant information that prison

6   officials prepared and used for plaintiff's first disciplinary hearing.  Defendant Wong was

7   concerned that the procedure might not have complied with California prison regulations and

8   noted that there was no indication that plaintiff had agreed to use the same investigative

9   employee report and staff assistant information in connection with the second disciplinary

10  hearing.  (Defs.' SUDF 40, Defs.' Ex. A.)

11          C.  Plaintiff's Third Disciplinary Hearing

12          Plaintiff's third disciplinary hearing took place on October 19, 2005.  On

13  September 20, 2005, prison officials served plaintiff with a third copy of the RVR.  The third

14  RVR, like the first two, consisted of a two-page written summary of the charges against plaintiff.

15  It again identified the specific act charged: Conspiracy to Murder Peace Officers and specified

16  the names of plaintiff's eight co-conspirators and the names of the five intended victims.  The

17  RVR also identified the method of attack planned in the conspiracy and stated that confidential

18  source(s) had identified plaintiff as being involved in the conspiracy.  On the same day, prison

19  officials served plaintiff with a copy of confidential disclosure forms containing a summary of all

20  the confidential information they intended to use at the third disciplinary hearing.  (Defs.' SUDF

21  41-44, Defs.' Ex. A.)

22          Although plaintiff did not meet the criteria for assignment of a staff assistant,

23  Senior Hearing Officer Statti assigned defendant Quezada to plaintiff for that purpose.

24  Defendant Quezada was present at the hearing.  Senior Hearing Officer Statti also assigned

25  defendant Gore as plaintiff's investigative employee in connection with the third disciplinary

26  hearing.  In preparing her investigative employee report, defendant Gore re-interviewed six of the

1    inmates plaintiff identified as witnesses.  She was unable to interview the seventh inmate

2    plaintiff identified because he had been transferred out of HDSP.  At plaintiff's request,

3    defendant Gore included with her report a statement by plaintiff and several written documents

4    plaintiff had composed in support of his defense.  (Defs.' SUDF 45-48, Defs.' Ex. A.)

5              Plaintiff attended the hearing and pled not guilty.  Upon plaintiff's request, Senior

6    Hearing Officer Statti agreed to consider all the questions and responses of all the witnesses

7    listed in both the first and second investigative employee reports.  Plaintiff requested that Senior

8    Hearing Officer Statti also consider a twenty-eight page written statement that plaintiff had

9    prepared as well as a separate two-page written statement in his defense.  Defendant Statti agreed

10   to do so and considered those materials in light of all of the evidence as part of the hearing.

11   (Defs.' SUDF 49-51, Defs.' Ex. A.)

12             Senior Hearing Officer Statti found plaintiff guilty of Conspiracy to Murder Peace

13   Officers.  He determined that plaintiff had participated with eight other inmates in planning an

14   attack designed to kill peace officers and that an overt act in furtherance of that conspiracy had

15   been committed when one of plaintiff's co-conspirators obtained a weapon to use during the

16   planned attack.  (Defs.' SUDF 52, Defs.' Ex. A.)

17             Senior Hearing Officer Statti drafted a nine-page typewritten summary of the

18   hearing, including a five and one half-page written explanation of the reasons for finding plaintiff

19   guilty of the charge.  Officer Statti assessed plaintiff 180-days loss of credits and recommended

20   the ICC assess plaintiff a SHU term.  Prison officials served plaintiff with a copy of Officer

21   Statti's findings and the disposition of the hearing.  (Defs.' SUDF 53-55, Defs.' Exs. A & B.)

22             The ICC imposed a forty-eight month SHU term on plaintiff.  Plaintiff received

23   credit towards his SHU term sentence for the time he had already spent in administrative

24   segregation while prison officials re-issued and re-heard the disciplinary charge.  In this regard,

25   plaintiff did not spend any additional time in administrative segregation or the SHU because of

26   the re-issuing and re-hearing of the charge.  (Defs.' SUDF 53-58, Defs.' Exs. A & B.)

II.  Defendants' Arguments

Defense counsel argues that the defendants are entitled to summary judgment in their favor with respect to plaintiff's Fourteenth Amendment claims because the undisputed evidence before the court establishes that plaintiff received well beyond the minimum procedural protections he was entitled to at all three of his disciplinary hearings.  In addition, defense counsel argues that plaintiff's disciplinary conviction is supported by some evidence. Specifically, multiple independent sources identified plaintiff as being involved in the conspiracy to murder peace officers.  Those sources were reliable because prison officials confirmed their disclosures by independent evidence, and their disclosures required self-incrimination.  Based on the undisputed evidence, defense counsel contends plaintiff's disciplinary conviction comports with Fourteenth Amendment due process protections.  (Defs.' Mem. of P. & A. at 7-12.)

III.  Plaintiff's Opposition

In opposition to defendants' motion for summary judgment, plaintiff argues that there are issues of material fact in dispute thereby precluding the granting of summary judgment. Specifically, plaintiff contends that he did not receive adequate notice of the disciplinary charge against him.  For example, plaintiff contends that the RVRs issued to him did not specify the date, time, and location of the alleged criminal act and did not provide specific details at to what he supposedly said or did in agreeing to be a part of the alleged conspiracy.  Plaintiff also contends that he did not receive adequate staff assistance.  In this regard, plaintiff contends his investigative employee failed to screen all of his prospective witnesses and did not ask any of the prepared questions plaintiff provided to her for those witnesses.  Similarly, according to plaintiff, his staff assistant refused to interview prospective witnesses on his behalf.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 19, 25-29.)

Plaintiff also argues that there was not some evidence to support his disciplinary conviction.  Specifically, plaintiff contends as follows.  Prison officials relied solely on confidential information to convict him and had no evidence that plaintiff was in possession of or

1   connected with any weapons.  Nor did prison officials have evidence that plaintiff wrote any tier

2   notes or letters related to the alleged conspiracy.  Finally, plaintiff contends that the senior

3   hearing officer at his disciplinary proceeding based his finding of a conspiracy upon the fact that

4   prison officials found plaintiff's alleged co-conspirator Doyle in possession of a weapon.

5   However, plaintiff contends that prison officials have since dismissed the conspiracy disciplinary

6   charge brought against Doyle, and so there is no longer an "overt act" upon which a conspiracy

7   can be based.  (Pl.'s Opp'n to Defs.' Mot. for Summ. J. at 30-35.)

8   IV.  Defendants' Reply

9          In reply, defense counsel argues that plaintiff received sufficient procedural and

10   substantive protections so as to satisfy the Fourteenth Amendment.  In this vein, defense counsel

11   argues as follows.  Plaintiff received written notice detailing the charges against him more than

12   twenty-four hours before each of his disciplinary hearings.  The written notice informed plaintiff

13   of the factual summary of the charge, the names of his co-conspirators, the five intended targets,

14   and the area of the prison where the conspiracy had occurred.  Had plaintiff received more

15   specific information he would have been able to identify the confidential sources.  Defense

16   counsel also argues that plaintiff received adequate staff assistance and was able to obtain

17   sufficient witness testimony.  Specifically, plaintiff obtained written responses to questions from

18   at least eighteen different witnesses.  In this regard, defense counsel contends that prison officials

19   did not preclude plaintiff from obtaining any information to which he was entitled.  Finally,

20   counsel argues that there was sufficient evidence to find plaintiff guilty of conspiring to murder

21   correctional officers.  The documents submitted under seal show that reliable confidential

22   source(s) identified plaintiff as an active participant in the conspiracy.  (Defs.' Reply at 2-5.)

23                                    **ANALYSIS**

24   I.  Plaintiff's Initial Placement in Administrative Segregation

25          As a preliminary matter, the court will address plaintiff's allegations regarding his

26   initial placement in administrative segregation.  According to plaintiff's third amended

complaint, on March 13, 2005, defendant Marshall ordered plaintiff's placement in administrative segregation pending an investigation for Conspiracy to Assault Staff.  On April 5, 2005, defendant Johnson retained plaintiff in administrative segregation pending an investigation for Conspiracy to Murder Peace Officers.  On April 14, 2005, plaintiff reappeared before the ICC and the committee retained him in administrative segregation.  Plaintiff summarily alleges that he was not able to mount a defense against his initial administrative segregation placement for various reasons, including not receiving adequate information about the disciplinary charge and not receiving a copy of an investigative report.  (Third. Am. Compl. at 6-7, 18-19, 38-39.)

Insofar as plaintiff has attempted to assert a due process claim in connection with the procedures the defendants used during his initial placement in administrative segregation, he fails to state a claim.  See Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986), abrogated on other grounds by Sandin v. Conner, 515 U.S. 472, 481-84 (1995).  When prison officials determine that they need to segregate a prisoner for administrative reasons, due process requires the following minimal procedures:

> Prison officials must hold an informal nonadversary hearing within a reasonable time after the prisoner is segregated.  The prison officials must inform the prisoner of the charges against the prisoner or their reasons for considering segregation.  Prison officials must allow the prisoner to present his views.

> We specifically find that the due process clause does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation.  We also find that due process does not require disclosure of the identity of any person providing information leading to the placement of a prisoner in administrative segregation.

Toussaint, 801 F.2d at 1100-01.

Here, plaintiff has alleged no facts demonstrating a lack of appropriate notice and opportunity to present his views, or periodic review of his placement.  In fact, plaintiff's own allegations and exhibits reflect that he received the appropriate CDC 114-D forms notifying him

1   the reasons for his initial placement in administrative segregation, that he had an opportunity to

2   appear before members of the ICC to discuss his initial placement, and that he re-appeared before

3   the ICC at least once to review his placement during the thirty-day period between defendant

4   Johnson's issuing of his CDC114-D and plaintiff's first disciplinary hearing.  (Third Am. Compl.

5   at 6-7 & Ex. A(9).)   In this regard, plaintiff received all of the minimal process required under

6   federal law.

7            Accordingly, insofar as plaintiff was attempting to assert a due process claim

8   regarding his initial placement in administrative segregation, that claim should be dismissed.

9   II.  <u>Plaintiff's Disciplinary Proceedings</u>

10            The court now turns to plaintiff's claims regarding his disciplinary proceedings.

11   As an initial matter, plaintiff's procedural due process claims related to either his first or second

12   disciplinary proceedings have been rendered moot by the subsequent re-issuing and re-hearing of

13   the rules violation charge against him.  <u>See</u> <u>Knight v. Evans</u>, No. C 08-00006 SBA (PR), 2010

14   WL 3702445, at *6 (N.D. Cal. Sept. 15, 2010) (procedural due process challenge to initial

15   disciplinary hearing rendered moot by subsequent reissuing of the charges and rehearing); <u>Wilson</u>

16   <u>v. Baker</u>, No. CIV S-06-0537 FCD GGH, 2010 WL 2555209, at *11 (E.D. Cal. June 18, 2010)

17   (plaintiff's claim regarding denial of ability to present witnesses rendered moot since plaintiff

18   was provided a new disciplinary hearing where the charge was dismissed).  As plaintiff himself

19   implicitly acknowledges, he has not incurred any actual injury as a result of either his first or

20   second disciplinary hearings.  Specifically, plaintiff received credit towards his ultimate SHU

21   term sentence for the time he spent in administrative segregation while prison officials re-issued

22   and re-heard his rules violation charge.  (Pl.'s Dep. at 45.)  It is undisputed that plaintiff did not

23   spend any additional time in administrative segregation or the SHU because of the time it took

24   prison officials to conduct his disciplinary proceedings.

25            As to plaintiff's procedural due process claims related to his third disciplinary

26   hearing, the court finds that the defendants have borne the initial responsibility of demonstrating

1   that there is no genuine issue of material fact with respect to the due process protections they

2   provided to plaintiff.  Specifically, defendants' evidence described above establishes that

3   plaintiff:  received advance written notice of the charge pending against him; had an opportunity

4   to present evidence and witnesses in his defense with correctional staff assistance; and received a

5   written statement summarizing the reasons for his disciplinary hearing and the hearing officer's

6   decision.  Wolff, 418 U.S. at 563-67; Hines, 108 F.3d at 268; McFarland, 779 F.2d at 1428.

7   Given the evidence submitted by defendants in support of the pending motion for summary

8   judgment, the burden shifts to plaintiff to establish the existence of a genuine issue of material

9   fact with respect to his procedural due process claims.

10          On defendants' motion for summary judgment, the court is required to believe

11   plaintiff's evidence and draw all reasonable inferences from the facts before the court in

12   plaintiff's favor.  The court has reviewed plaintiff's verified amended complaint, his opposition

13   to defendants' motion for summary judgment, and his deposition testimony.  Drawing all

14   reasonable inferences in plaintiff's favor, the court concludes that plaintiff has not submitted

15   sufficient evidence to create a genuine issue of material fact with respect to his claim that the

16   defendants denied him his procedural due process protections.  See Wolff, 418 U.S. at 563-67.

17          First, plaintiff complains that he did not receive specific notice of the charge

18   against him.  The evidences submitted on summary judgment establishes to the contrary.  It is

19   undisputed that prison officials served plaintiff with a copy of the RVR within fifteen days of

20   defendant Wong's re-issue and re-hear order.  The RVR that was issued informed plaintiff that

21   reliable confidential sources had provided prison officials with information that plaintiff, together

22   with Inmates Singleton, McLaughlin, Bridges, Vaughn, Carter, Lewis, Merano, and Doyle were

23   conspiring to murder peace officers Captain Johnson, Lieutenant Davey, Sergeant St. Andre, and

24   Officers Ginder and Zills on the C-Facility at HDSP.  The sources also informed prison officials

25   that the conspiracy involved members of both Crip and Blood disruptive groups.  According to

26   the confidential sources, the RVR stated, plaintiff and the co-conspirators intended to execute

18

1   their conspiracy upon completion of the Control Release (Step Program).  The plan consisted of

2   luring staff into vulnerable locations within the prison (including dining halls, education,

3   canteen, and medical) and staging a mock fight to cause distraction.  Once a Code 1 response was

4   initiated, the Black inmate population would be responsible for attacking the pre-determined

5   peace officers.  As responding staff arrived, inmates would attack them to slow their response.

6   The plan involved inmates using stabbing-type weapons on the peace officers' face, neck, and

7   groin, thus focusing on areas of the body unprotected by the stab-resistant vest worn by

8   correctional officers.  Finally, the co-conspirators intended to respond to any accusations of a

9   conspiracy to murder peace officers by stating that there was too much tribalism or factionalism

10  amongst black gang members to coordinate a unified assault against correctional staff.  In

11  addition to the RVR, plaintiff received seven confidential disclosure forms that explained the

12  confidential information received and why prison officials considered the information reliable.

13  (Defs.' Ex. A Pt. 1.)

14              Plaintiff complains that the notice failed to include the precise date, time and

15  place of his alleged wrongdoing.  However, such details are not necessary in a prison disciplinary

16  charge to satisfy due process requirements.  See Wolff, 418 U.S. at 564 ("Part of the function of

17  notice is to give the charged party a chance to marshal the facts in his defense and to clarify what

18  the charges are, in fact.");  Zimmerlee, 831 F.2d at 188 (inmate received sufficient notice of

19  charges against him when the "notice charged [inmate] with smuggling marijuana and

20  amphetamines into the prison with members of the Screaming Eagles from February 13, to July

21  23, 1984," and "on at least one occasion during a Club meeting [another] inmate . . . had supplied

22  drugs to [the inmate]");  Gauthier v. Dexter, 573 F. Supp. 2d 1282, 1289 (C.D. Cal. 2008)

23  (rejecting an argument that a prisoner did not receive sufficient notice of the disciplinary charges

24  because the written notice did not include the exact date and time of the alleged offense and did

25  not include all the evidence to be relied upon);  Watts v. Castro, No. C 99-3449 SI PR, 2001 WL

26  492477, at *3-4 (N.D. Cal. 2001) (rejecting argument that prisoner did not receive sufficient

1   notice of the charges because the written notice did not include the date, time, and place of

2   prisoner's "routine smuggling of narcotics").

3           Accordingly, defendants are entitled to summary judgment on plaintiff's claim

4   that he was provided inadequate notice of the prison disciplinary charge against him in violation

5   of his due process rights.

6           Second, plaintiff complains that defendant Statti and others interfered with his

7   right to call witnesses at his disciplinary hearing.  Plaintiff also complains that defendant Statti

8   falsified the hearing record to suggest that plaintiff agreed to rely upon the investigative reports

9   from previous hearings in lieu of calling witnesses.  Plaintiff submits that if prison officials

10  allowed him to call his witnesses at the disciplinary hearing, they would have provided evidence

11  to discredit the confidential informants and absolve him of the charge.  (Third Am. Compl. at 27-

12  30, Pl.'s Dep. at 49-52.)

13          According to the disciplinary hearing transcript submitted by defendants, plaintiff

14  was provided the opportunity to call witnesses but chose not to do so at his hearing.  The record

15  in this regard reflects as follows:

16          Inmate BROWN was given an opportunity to request the presence
            of witnesses, at this hearing at the time he was given his copy of
17          the CDC-115-A.  Inmate BROWN requested on the CDC-115-A to
            "see witness list on I.E. report".  In addition, according to the
18          CDC-115-A, BROWN also requested the reporting employee to be
            present at this hearing.
19
            During this hearing, the SHO asked BROWN to clarify what he
20          wanted in addition to what was already stated on his current I.E.
            report.  BROWN stated that his current I.E. report does not include
21          all the pertinent facts that he wanted included in this hearing.  This
            SHO then asked if this I.E. report and the previous I.E. report from
22          the last R/R were combined if he would have an issue with the
            contents.  BROWN stated, "no."  This SHO then asked if both I.E.
23          reports could be included in the adjudication of this hearing.
            BROWN stated, "yes."  This SHO asked if the information that
24          was provided in both I.E.'s were accurate.  BROWN stated, "yes."
            The SHO then asked if BROWN had any additional witnesses,
25          information, or statements that he wanted included in this CDC
            115.  BROWN stated, "just my two (2) page written statement for
26          this hearing, and the twenty-eight (28) page statement of I.E.

20

questions that was contained in the last R/R hearing." This SHO agreed to include both statements in this hearing.

This SHO also stated that the reporting employee, Lieutenant Marshall, was available as a witness for this hearing, and Lieutenant Marshall could be called and be present in less than five minutes. BROWN stated that there was no need to call Lieutenant Marshall. BROWN stated that the only thing he wanted was to make sure his two (2) page written statement and the twenty eight (28) page statement of the I.E. questions be included with this hearing. This SHO asked if BROWN had any questions for Lieutenant Marshall. BROWN stated, "no." As a result of BROWN'S responses, the reporting employee was not called as a witness for this hearing.

In addition, this SHO agreed to accept all statements made as indicated in the I.E. reports.

This SHO notes that in the two (2) page written statement that was presented at this hearing, BROWN alleges that Officer Gore did not conduct a meaningful investigation, and that Officer Gore lost or destroyed the (twenty-eight page) statement and witness questionaire. This problem is alleviated when BROWN agreed to accept both the current I.E. and the previous (R/R) I.E. report. As for the (twenty-eight page) statement, it is with this CDC 115, and it has been included in this hearing.

(Defs.' Ex. A. Pt. 1.)

Based on the conflicting version of events described by plaintiff on the one hand and the record submitted by defendants' on the other hand, there may be some factual dispute as to whether plaintiff's limited right to call witnesses at his disciplinary hearing was interfered with in any way. However, not every factual dispute will defeat a motion for summary judgment. As the Supreme Court has made clear that:

When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

Scott v. Harris, 550 U.S. 372, 380 (2007). See also Celotex Corp., 477 U.S. at 322 (summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

1   party's case, and on which that party will bear the burden of proof at trial); Addisu v. Fred

2   Meyer, 198 F.3d 1130, 1134 (9th Cir. 2000) ("A scintilla of evidence or evidence that is merely

3   colorable . . . does not present a genuine issue of material fact" but rather there "must be enough

4   doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment

5   motion."); Hansen v. United States, 7 F.3d 137, 138 (9th Cir. 1993) ("When the non-moving

6   party relies on its own affidavits to oppose summary judgment, it cannot rely on conclusory

7   allegations unsupported by factual data to create an issue of material fact.").

8          Here, the court finds that plaintiff's version of the facts is blatantly contradicted

9   by the record in this case, and no reasonable trier of fact could find in plaintiff's favor with

10  respect to his claim that defendants interfered with his right to call witnesses at his disciplinary

11  hearing.  Although plaintiff claims that the defendant Statti falsified the record to comport with

12  defendants' version of the facts, plaintiff's claim in this regard is based purely on speculation.

13  Plaintiff has not provided any evidence whatsoever to indicate that the record has been falsified

14  or otherwise altered in this respect.

15         Moreover, even if the court were to assume that plaintiff's wholly unsupported

16  version of the facts is true, plaintiff has provided no evidence as to what any of his proposed

17  witnesses would have testified to had defendant Statti called them to testify at the disciplinary

18  hearing.  Although plaintiff speculates that his witnesses would have testified to events and

19  circumstances that may have helped to exonerate him, he has not submitted any evidence in the

20  form of declarations from any of the proposed witnesses, for example, to show that any such

21  witnesses would have testified to as much at his hearing.  In fact, plaintiff's explanation at his

22  deposition as to why he wanted defendant Statti to call certain witnesses indicates that those

23  proposed witnesses would not have provided any exonerating testimony.  For example, at his

24  deposition, plaintiff explained that he wanted to question additional staff at Pelican Bay State

25  Prison.  In plaintiff's view, he believed the disciplinary charge brought against him at that prison

26  for conspiracy was irrelevant to this incident at HDSP.  Plaintiff also wanted to ask defendant

1    Statti questions about his computer voice stress analyzer test even though, as plaintiff

2    acknowledges, the results of that test proved to be inconclusive.  Finally, plaintiff testified that he

3    wanted to ask additional questions of the correctional officers who interviewed confidential

4    informants because"they would not answer correctly" the questions previously posed to them.

5    (Pl.'s Dep. at 49-52.)  Thus, even plaintiff's after-the-fact explanation as to what his proposed

6    witnesses would have testified to if called at his disciplinary hearing indicates that the testimony

7    of such witnesses would have been largely irrelevant to the disciplinary charge pending against

8    him.

9            In short, plaintiff's conclusory allegations that any proposed witnesses would have

10   helped exonerate him of the disciplinary charge is simply not enough to allow this aspect of his

11   due process claim to survive summary judgment.  It is well established that:

12              [W]hen the moving party has carried its burden under Rule 56(c),
                its opponent must do more than simply show that there is some
13              metaphysical doubt as to the material facts. . . . Where the record
                taken as a whole could not lead a rational trier of fact to find for
14              the nonmoving party, there is no genuine issue for trial.  The mere
                existence of some alleged factual dispute between the parties will
15              not defeat an otherwise properly supported motion for summary
                judgment; the requirement is that there be no genuine issue of
16              material fact.

17   Scott, 550 U.S. at 380.  Here, the court finds that plaintiff has not raised a genuine issue of

18   material fact as to this aspect of his due process claim.  See Mack v. Lamarque, No. 06-15915,

19   2009 WL 2013129 at *1 (9th Cir. June 16, 2009) ("The district court properly granted summary

20   judgment on Mack's due process claim against defendant Mirich arising from Mirich's refusal to

21   allow Mack to call two witnesses at Mack's disciplinary hearing, because Mack failed to raise a

22   genuine issue of material fact as to whether those witnesses would have provided any additional,

23   relevant evidence.")[3]; Palmer v. Salazar, No. C 08-5378 SI (pr), 2011 WL 3046217 at *10 (N.D.

24   Cal. July 25, 2011) ("While Wolff allows an inmate a limited right to call witnesses, it is illogical

25   _____

26         [3]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth
     Circuit Rule 36-3(b).

1    to argue that the right is implicated whenever a prisoner asserts that he intends to call additional

2    witnesses to present undescribed testimony."); <u>Ramirez v. Galaza</u>, No. 1:99-CV-6282 OWW

3    DLB P, 2006 WL 2320572 at *6 (E.D. Cal. Aug. 10, 2006) ("While Plaintiff makes the

4    conclusory allegation that the denial of witnesses violated his due process rights, he does not

5    proffer what the substance of their testimony would have been or how it could have helped him. .

6    . .  Thus, Plaintiff has failed to present any facts which would raise a triable issue that he was

7    denied the testimony of a witness who would offer relevant evidence in his favor.").

8           Accordingly, defendants are entitled to summary judgment on plaintiff's

9    procedural due process claim that his limited right to call witnesses at his disciplinary hearing

10   was interfered with.

11          Finally, plaintiff complains that he did not receive adequate support from his

12   assigned investigative employee, defendant Gore, or his staff assistant, defendant Quezada.

13   Specifically, plaintiff alleges that he provided defendant Gore with a twenty-eight page handout

14   containing his own statement and a witness questionnaire.  According to plaintiff, defendant

15   Gore failed to interview most of the requested witnesses, including eight additional co-

16   conspirators added to the RVR when it was re-issued and re-heard, and did not ask those

17   witnesses who were interviewed any of plaintiff's proposed questions.  Similarly, plaintiff alleges

18   that defendant Quezada refused to follow-up with plaintiff's requested witnesses.  (Third Am.

19   Compl. at 23-30, Pl.'s Dep. at 49-52.)

20          The Supreme Court explained in <u>Wolff</u> that a prisoner in this context has only a

21   qualified right to staff assistance:

22          Where an illiterate inmate is involved, however, or where the
            complexity of the issue makes it unlikely that the inmate will be

23          able to collect and present the evidence necessary for an adequate
            comprehension of the case, he should be free to seek the aid of a

24          fellow inmate, or if that is forbidden, to have adequate substitute
            aid in the form of help from the staff or from a sufficiently

25          competent inmate designated by the staff.

26   <u>Wolff</u>, 418 U.S. at 570.

1        First, where defendant Gore is concerned, courts have not uniformly held that a

2 prisoner has a federal due process right to the assignment of an investigative employee.  See

3 Trujillo v. Vaughn, No. 06-17104, 2008 WL 681085 at *1 (9th Cir. 2008) ("the assignment of an

4 investigative employee . . . does not equate to a determination that he had a federal due process

5 right to such assistance pursuant to Wolff.")[4]; Simpson v. Dexter, No. CV 09-0300 DDP (RNB),

6 2009 WL 6340117 at *4 (C.D. Cal. Aug. 13, 2009) ("To the extent that petitioner is contending

7 . . . that he was denied an investigative employee, the Court finds that neither Wolff nor any other

8 Supreme Court case guarantees an inmate the assistance of an investigative employee and that

9 such a right (qualified as it is) is unique under State law.").

10        However, even if plaintiff was to have a federal due process right to an

11 investigative employee, based on the undisputed record in this case, the court finds that

12 defendant Gore did not violated plaintiff's qualified right to assistance under Wolff.  Specifically,

13 according to defendant Gore's investigative employee report, plaintiff submitted to the defendant

14 a hand written statement.  In defendant Gore's view that statement did not make any sense

15 because "[t]he questions asked are irrelevant and/or confidential."  However, defendant Gore

16 proceeded to interview defendant Marshall, the reporting employee, on plaintiff's behalf and

17 documented his knowledge of the charged rules violation.  Defendant Gore also interviewed

18 plaintiff's alleged co-conspirators - inmates Singleton, Bridges, Vaughn, Carter, Lewis, Merano,

19 and Doyle  - regarding their knowledge of the charged rules violation.  Inmate Bridges reported

20 to defendant Gore that he did not know plaintiff and did not conspire to do anything with anyone,

21 while inmates Vaughn, Carter, Lewis, Merano, and Doyle merely stated "No comment" when

22 questioned on behalf of plaintiff.  Finally, defendant Gore was unable to question Inmate

23 Singleton because he was no longer housed at HDSP.  (Defs.' Ex. A. Pt. 1.)

24 /////

25

26        [4] See fn. 3, above.

1          Although plaintiff may have preferred defendant Gore interview additional

2   witnesses and conduct further investigation, plaintiff was not entitled to as much under federal

3   law.  See Walker v. Sumner, 14 F.3d 1415, 1419-20 (9th Cir. 1994) (the federal Constitution

4   requires prison officials to comply the minimal procedures outlined in Wolff; it does not require

5   prison officials to comply with their own more onerous procedures), abrogated on other grounds

6   by Sandin, 515 U.S. 472.  Nor has plaintiff offered any evidence specifying what additional

7   information defendant Gore would have gathered had he interviewed additional witnesses and

8   asked them questions to plaintiff's liking and how such additional information would have aided

9   plaintiff's defense in any event.  See Palmer v. Salazar, No. C 08-05378 SI (pr), 2011 WL

10  3046217 (N.D. Cal. July 26, 2011) (finding defendant investigative employee was entitled to

11  summary judgment because plaintiff failed to specify what evidence the defendant failed to

12  collect or how such evidence would have been necessary in plaintiff's defense).

13         Next, based on the undisputed evidence in this case, the court finds that defendant

14  Quezada also did not violate plaintiff's qualified due process right to staff assistance under

15  Wolff.  It is undisputed that plaintiff is not an "illiterate inmate" and therefore was not entitled to

16  staff assistance on that basis.  Plaintiff scored at a 12.9 level on the test the prison uses to

17  measure an inmate's ability to read, write, speak, and understand English.  As plaintiff himself

18  acknowledges, that is a rather high literacy level, and he clearly does not lack the ability to

19  understand basic concepts.  (Pl.'s Dep. at 35.)  It is also undisputed that, at the time of the

20  disciplinary hearing in question, defendant Statti had determined that plaintiff did not need staff

21  assistance because plaintiff informed Statti that he understood the CDC 115, the CDC 115

22  process, and the related documents.  Although defendant Statti found that plaintiff had "a very

23  good understanding of this particular charge," he nevertheless assigned defendant Quezada as

24  plaintiff's staff assistant, and defendant Quezada was present at plaintiff's disciplinary hearing.

25  (Defs.' Ex. A. Pt. 1.)

26  /////

1    Again, although plaintiff may have preferred defendant Quezada to follow-up

2  with witnesses that defendant Gore purportedly failed to interview and to conduct further

3  investigation, plaintiff was not entitled to as much under federal law.  See Walker, 14 F.3d at

4  1419-20.[5]  Nor has plaintiff offered any evidence specifying what information the witnesses that

5  defendant Quezada purportedly failed to follow-up with would have provided or how that

6  information would have supported his defense.  See Palmer v. Salazar, No. C 08-05378 SI (pr),

7  2011 WL 3046217 (N.D. Cal. July 26, 2011) (finding defendant investigative employee was

8  entitled to summary judgment because plaintiff failed to specify what evidence the defendant

9  failed to collect or how it would have been necessary in plaintiff's defense).

10    Accordingly, defendants are entitled to summary judgment in their favor with

11  respect to plaintiff's procedural due process claim that he received inadequate staff assistance in

12  connection with his disciplinary hearing.

13  III.  Plaintiff's Substantive Due Process Claims

14    The court now turns to plaintiff's allegations challenging the sufficiency of

15  evidence prison officials relied upon in finding him guilty of the Conspiracy to Murder Peace

16  Officers disciplinary charge.  According to plaintiff's third amended complaint, prison officials

17  used that disciplinary charge as a tool to lock-up inmates that they deemed as a threat to the

18  institution because they have influence amongst their fellow inmates.  Plaintiff maintains that the

19  defendants relied on "unsubstantiated confidential information" to find him guilty of Conspiracy

20  to Murder Peace Officers.  (Third. Am. Compl. at 21, 28-30.)

21  /////

22    [5]  In fact, it does not appear that plaintiff was entitled to as much even under state law.

23  California law distinguishes between investigative employees and staff assistants.  An
    investigative employee, when assigned, is responsible for interviewing the charged inmate,

24  gathering information, questioning staff and inmates with relevant information, and screening
    prospective witnesses.  See Cal. Code. Tit. 15 § 3318(a).  In contrast, a staff assistant when

25  assigned, is responsible for informing the inmate of his rights and the disciplinary hearing
    procedures, advising and assisting the inmate in preparation for the hearing, and representing the

26  inmate's position at the hearing.  See Cal. Code. Tit. 15, § 3318(b).

1    As to this claim, the court finds that the defendants have borne the initial

2    responsibility of demonstrating that there is no genuine issue of material fact with respect to the

3    adequacy of evidence relied upon in finding plaintiff guilty of the prison disciplinary charge of

4    Conspiracy to Murder Peace Officers.  Specifically, defendants' evidence, submitted to this court

5    under seal, demonstrates that confidential source(s) who met the standard for reliability identified

6    plaintiff as an active participant in the charged conspiracy.  (Defs.' Exs. D-J.)  Given the

7    evidence submitted by defendants in support of the pending motion for summary judgment, the

8    burden shifts to plaintiff to establish the existence of a genuine issue of material fact with respect

9    to his due process claim.

10    Drawing all reasonable inferences in plaintiff's favor, the court concludes that

11    plaintiff has not submitted sufficient evidence in this action to create a genuine issue of material

12    fact with respect to his claim that there was insufficient evidence to convict him of the charge.

13    See Superintendent v. Hill, 472 U.S. 445, 455-56 (1985).  As an initial matter, due process only

14    requires an inmate's placement and retention in SHU be supported by "some evidence."  Id.  See

15    also Hines, 108 F.3d at 268.  This "some evidence" standard is satisfied if "there was some

16    evidence from which the conclusion of the administrative tribunal could be deduced. . . . "  Hill,

17    472 U.S. at 455.  In determining whether the some evidence standard has been met, the court

18    does not need to examine the entire record, independently assess the credibility of witnesses, or

19    weigh the evidence.  Id.  The Due Process Clause only requires that the evidence have some

20    indicia of reliability and that the findings have some modicum of evidentiary support.  Id.

21    Plaintiff takes particular issue with the fact that prison officials relied in his case

22    on confidential information to find him guilty of the disciplinary charge.  However, a prison

23    disciplinary committee may reach its decision based on a statement from an unidentified source

24    and satisfy due process requirements if the following conditions are met:

25    (1) the record contains some factual information from which the
     committee can reasonably conclude that the information was
26    reliable; and (2) the record contains a prison official's affirmative

28

1    statement that safety considerations prevent the disclosure of the
     informant's name.  Review of both the reliability determination
2    and the safety determination should be deferential.

3  Zimmerlee, 831 F.2d at 186.

4           Here, there was "some evidence" to support plaintiff's disciplinary conviction.

5  Specifically, the hearing officer relied on multiple confidential sources with first-hand knowledge

6  of the information they reported.  Several of the sources incriminated themselves in divulging the

7  information and/or participated in a computerized voice stress analysis test successfully.  The

8  confidential memoranda and the CDC-1030 form contained prison officials' affirmative

9  statements that safety considerations and institutional security concerns prevented the disclosure

10 of the names of the sources of this information.  The confidential memoranda also contained

11 information from which the hearing officer could reasonably conclude that the evidence was

12 reliable.  The confidential information was subsequently corroborated by prison officials with the

13 discovery of a weapon in a co-conspirator's cell and reaffirmed by other sources.  The court has

14 reviewed the confidential memoranda in camera and has found ample evidence of the reliability

15 of the information set forth therein.  (Defs.' Exs. A & D-J.)

16          Plaintiff has provided no evidence indicating that the defendants falsified or

17 fabricated the evidence against him or that the evidence was otherwise unreliable.  Thus, the only

18 relevant question is whether there is any evidence in the record that supports the conclusion of

19 guilt reached at plaintiff's disciplinary hearing.  See Hill, 472 U.S. at 455.  In this case, there is

20 some evidence in the record supporting that determination.  See Williams v. Foote, No. CV 08-

21 2838, 2011 WL 6968033 at *11-12 (C.D. Cal. Oct. 5, 2011) (independent reports from two

22 confidential sources with first-hand knowledge of the information that was corroborated and

23 supplemented by other sources constituted "some evidence" to support an RVR and disciplinary

24 conviction for attempting to murder a peace officer); Martinez v. J. Cathey, No.

25 1:02cv06619RECLJOP, 2006 WL 707405, at *8 (E.D. Cal. Mar. 20, 2006) (summary judgement

26 in favor of defendants granted following court's in camera review of confidential memorandum

1  relied upon in plaintiff's gang validation which was found to satisfy the "some evidence"

2  standard).

3            Accordingly, defendants are entitled to summary judgment on plaintiff's due

4  process claim challenging the sufficiency of the evidence relied upon in convicting him of the

5  disciplinary charge.

6            In sum, based on the undisputed facts in this case, the court finds that plaintiff

7  received all of the due process he was entitled to under federal law in connection with his

8  disciplinary proceedings and conviction for Conspiracy to Murder a Peace Officer.  Therefore,

9  defendants' motion for summary judgment should be granted.[6]

10                              **CONCLUSION**

11            IT IS HEREBY ORDERED that:

12            1.  Defendants' request that confidential memoranda from plaintiff's central file,

13  referenced as Exhibits D through J in support of defendants' motion for summary judgment, be

14  reviewed by the court in camera and filed under seal (Doc. Nos. 57 & 58) is granted; and

15            2.  The Clerk of the Court is directed to file under seal the confidential

16  memoranda from plaintiff's central file referenced as Exhibits D through J in support of

17  defendants' motion for summary judgment.

18            IT IS HEREBY RECOMMENDED that:

19            1.  Defendants' motion for summary judgment (Doc. No. 58) be granted; and

20            2.  This action be closed.

21  /////

22  _____

23            [6]  Defense counsel also argues that dismissal of plaintiff's third amended complaint is
    appropriate because:  (1) plaintiff's claims are barred by the doctrine of res judicata or collateral
24  estoppel; (2) the allegations of plaintiff's third amended complaint do not link any defendant
    other than defendant Statti to a cognizable constitutional claim; and (3) defendants are entitled to
25  qualified immunity.  In light of the recommendation set forth above that defendants' motion for
    summary judgment be granted on the merits, the court need not address defense counsel's
26  alternative arguments in support of dismissal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within seven days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 29, 2012.

Dale A. Drozd
_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:9
brow0956.msj

31